**Anthony WAGNER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ANTHONY WAGNER AUTO REPAIRS & SALES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 6, 2012.

Decided June 4, 2012.

Eugene Mattioni, Philadelphia, for petitioner.

Curtis P. Cheney, III, Philadelphia, for intervenor Harleysville Insurance Company.

BEFORE: LEADBETTER, President Judge [1], and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Anthony Wagner (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that denied his claim for benefits for the reason that he was exempt from coverage under his employer's workers' compensation policy. The Board affirmed the dispositive factual finding of the Workers' Compensation Judge (WCJ) that Claimant, an executive officer of the corporation that employed him, had exempted himself from coverage, in accordance with the Workers' Compensation Act (Act).[2] Discerning no error in the Board's adjudication, we affirm.

On June 24, 2009, Claimant filed a claim petition against Anthony Wagner Auto Repairs & Sales, Inc. (Employer) alleging that he had sustained work–related injuries in an automobile accident on July 21, 2006.[3] Employer's insurer, Harleysville Mutual Insurance Company (Insurer), denied the allegations. A hearing before a

---

1. This case was assigned to the opinion writer on or before January 6, 2012, when President Judge Leadbetter completed her term as President Judge.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

3. Claimant also sought payment of his medical bills and unreasonable contest fees.

WCJ was scheduled and the issues were bifurcated. The first issue was whether Claimant, an executive officer of Employer, had waived workers' compensation coverage for himself under authority of Section 104 of the Act. It states, in relevant part, as follows:

*An executive officer of a for-profit corporation* or an executive officer of a nonprofit corporation who serves voluntarily and without remuneration may, however, *elect not to be an employe of the corporation for the purposes of this act.* For purposes of this section, an executive officer of a for-profit corporation is an individual who has an ownership interest in the corporation, in the case of a Subchapter S corporation ... or an ownership interest in the corporation of at least five per centum, in the case of a Subchapter C corporation....

77 P.S. § 22 (emphasis added).

At the hearing, Claimant testified that from 1994 to 2004 he operated a motor vehicle garage, gas station, used car lot, and convenience store. He operated this business as a sole proprietorship, under the fictitious name "Wagner's Coach Repairs & Sales." In January 2004, Claimant's accountant, Michael Rowley, incorporated the business under the name "Anthony Wagner Auto Repairs & Sales, Inc." Claimant is the sole shareholder of the corporation, which is organized under the Internal Revenue Code as a Subchapter S corporation. Claimant testified that the corporation employs two individuals: a mechanic's assistant and himself, the mechanic.

Claimant stated that the J.L. Davis Insurance Agency (Agency) has been his insurance agent since 2002. Sometime in 2003, Agency assigned Lisa Tori to be responsible for his account. Tori reviewed his insurance needs; replaced expired policies; and placed all policies and relevant documents in a three ring binder for him. Claimant stated that his meetings with Tori usually took less than 15 minutes, during which time he signed whatever Tori asked him to. He did not read any of the documents he signed.

Claimant stated that he informed Agency in January of 2004 that he had incorporated his business and was advised that any necessary changes to his insurance coverage would be made at the August renewal meeting. Tori visited his shop in August, and he signed all the documents she presented. He did not recall signing any paperwork relating to his incorporation of the business. Claimant testified that he was not informed that, as an executive officer of the corporation, he could waive workers' compensation coverage for himself and pay a lower premium for the policy. Reproduced Record at 193a–194a (R.R.——).

Claimant then offered into evidence a letter from Tori dated August 16, 2005. The first sentence of the letter states that attached to it were forms "to exclude [Claimant]" from workers' compensation coverage now that the business was incorporated. Employee Exhibit 3; R.R. 317a. Attached to the letter exhibit was a Form LIBC–509, "Application for Executive Officer Exemption," and a Form LIBC–513, "Executive Officer's Declaration," which were blank.[4] Claimant also offered into evidence executed copies of these forms. Form LIBC–513 states, in pertinent part, that "I, the below named Executive Officer, do hereby knowingly and voluntarily elect not to be an employee of the below

---

4. A completed version of LIBC–513 was admitted as Employee Exhibit 4, and a completed version of LIBC–509 was admitted as Employee Exhibit 5. R.R. 322a, 323a. The letter and attached blank forms were admitted as Employee Exhibit 3. R.R. 319a.

named corporation for purposes of the Pennsylvania Workers' Compensation Act, and waive all benefits and rights to which I might be entitled under the Pennsylvania Workers['] Compensation Act." Employee Exhibit 4; R.R. 322a. This statement was followed by Claimant's signature. Claimant acknowledged signing Forms LIBC–509 and 513 but stated that he did not read them first and that he would not have signed them had he known that he was waiving workers' compensation coverage.

On cross-examination, Claimant acknowledged that he graduated from high school and understands and reads English. He reiterated that typically he does not read official documents, including business contracts, invoices and tax returns, before signing them.

Insurer then presented the testimony of Tori. She explained that Claimant instructed her to deal with his girlfriend, Donna Dixon, about his insurance matters. Tori testified that she first learned Claimant had incorporated his business in August of 2005, when Dixon called her and informed her of the change. Tori testified that she advised Dixon that unlike a sole proprietorship, employees of a corporation, even officers, can be covered for workers' compensation insurance. However, Claimant's earnings would have to be included in the payroll on which the premium is calculated. Dixon responded that Claimant wanted the premium to remain the same and, thus, would exclude himself from workers' compensation coverage.

On August 16, 2005, Tori sent Claimant the letter that he offered into evidence as Employee Exhibit 3, which advised Claimant to fill out the attached Forms LIBC–509 and 513 so that he could be excluded from coverage. Tori testified that the exhibit was inaccurate because she had sent Claimant forms that were almost fully completed, except for the corporate form and federal tax identification number that needed to be provided by Claimant. He provided this information and returned the forms with his signature.

Upon receipt of Forms LIBC–509 and 513, Insurer requested final payroll information for the 2004–2005 policy year and an estimated payroll for the 2005–2006 policy year. The payroll information for both years included only the wages of the mechanic's assistant. At the time he prepared the payroll information, Claimant's accountant, Rowley, advised Tori that Claimant was to be exempt from workers' compensation coverage. Accordingly, Claimant's wages were not reported to Insurer or used to calculate the premium for Employer's workers' compensation policy.

Next, Javina Davis, who is employed by Agency, testified. When Claimant became a client of Agency, she explained to him that, as a sole proprietor, he could not be covered under the workers' compensation insurance policy. She then explained to Claimant that workers' compensation insurance premium is calculated on the basis of payroll. Annual payroll is estimated at the inception of the policy period. After conclusion of the policy year, the payroll is audited and the premium is adjusted to reflect deviations from the estimated payroll. Davis stated that the audit for the 2005–2006 policy period, which was performed on August 4, 2006, listed Claimant as "exempt," which she interpreted as exempt from coverage under the workers' compensation policy.

On cross-examination, Davis was questioned about Employer's workers' compensation policy that was in effect from August 15, 2005, to August 15, 2006. The policy included four endorsements, including one evidencing the change from a sole proprietorship to a corporation. There was no specific endorsement showing that

Claimant was exempt from the policy's coverage.

Davis then testified about the Pennsylvania Workers' Compensation Rating Manual (Rating Manual) adopted by the Pennsylvania Compensation Rating Bureau for use by member insurers with respect to policy forms and rates. The Rating Manual provides for a specific endorsement to be used when an executive officer waives workers' compensation coverage.

Finally, Lori Clemons, an underwriting specialist with Insurer, testified about Employer's workers' compensation insurance policy. Clemons stated that the premium for the policy in question was based upon payroll for one employee. She noted that Insurer uses minimum and maximum wages for covered employees. For executive officers, Clemons testified that the minimum wage was $18,200. Had Claimant been covered under the policy Employer's premium would have increased approximately 50% from $1,809 to $2,968 per year, because it would have been based on Claimant's minimum wage and the salary of the mechanic's assistant.

Clemons testified that Insurer does not have a formal policy requiring the use of an executive officer exclusionary endorsement. On cross-examination, Clemons acknowledged that the Rating Manual states that insurers "will endorse" policies where executive officers are excluded from coverage and that such an endorsement was not attached to Employer's policy. However, Clemons stated that the Rating Manual does not mandate the use of that endorsement. Finally, Clemons stated that Claimant knew he was not covered because he had requested the exemption, as evidenced by Forms LIBC–509 and 513.

The WCJ denied Claimant's petition. The WCJ found Claimant's testimony "not credible, believable, or logical concerning any disputed point." WCJ Decision at 11, Finding of Fact 15 (F.F.——). Conversely, he found the testimony of Tori, Davis, and Clemons to be "fully credible, consistent, logical and supported by documentation." *Id.* Accordingly, the WCJ found that Claimant had intentionally, voluntarily and knowingly requested, in writing, to be excluded from the workers' compensation policy and that "all competent persons are charged with knowledge of what they sign[.]" *Id.* The WCJ rejected Claimant's argument that the absence of an exclusionary endorsement required a finding of coverage. The WCJ reasoned that the purpose of the endorsement was to provide the employer notice of the policy's contents. Because Claimant had personally signed Forms LIBC–509 and 513, the WCJ found that Claimant knew he was excluded.

Claimant appealed to the Board. He argued that the WCJ erred in holding that the LIBC forms constituted a valid waiver of coverage. He contended that the Rating Manual required the Insurer to issue the exclusionary endorsement, and it failed to do so. The Board affirmed the WCJ. The Board reasoned that it was only equitable to exclude Claimant from coverage because the annual premium would have been 50% higher had the policy covered Claimant. The Board also concluded that the absence of the executive officer exclusionary endorsement did not mean that Claimant was covered. Claimant petitioned for this Court's review.

■ On appeal,[5] Claimant argues that the WCJ and the Board erred. He offers

5. Our review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether the Board's procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. Section 704 of

several arguments that we restate as two. First, Claimant argues that the WCJ and Board ignored the plain language of the policy, which does not expressly exclude him from coverage. Second, Claimant contends that Insurer's failure to issue his company a policy with the specific exclusionary endorsement provided in the Rating Manual rendered his exclusion invalid. We address these issues *seriatim.*

■ Claimant's first argument presents an issue of contract construction. Claimant notes that the policy has an "entire contract" clause, which provides that the terms of the policy may be changed only by endorsement.[6] Claimant contends that the Board erred in relying upon Forms LIBC–509 and 513 because they are not part of the contract. In support, Claimant directs the Court to *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 469 A.2d 563 (1983) (holding that limitation on coverage must be clear and conspicuous in an insurance policy). At a minimum, according to Claimant, the policy is ambiguous and, thus, should be construed against Insurer.

Claimant's contract argument ignores an endorsement that was attached to the policy after Claimant incorporated his business. That endorsement stated (1) that Employer had changed from a sole proprietorship to a corporation, (2) that Employer's total payroll was $19,468, and (3) that the number of employees was *one.* Given this endorsement, it cannot be inferred that the policy clearly and unambiguously covers a second employee, *i.e.,* Claimant,

against losses caused by work-related injuries. *See Standard Venetian Blind,* 503 Pa. at 307, 469 A.2d at 567 (noting that an insured cannot avoid the consequences of a policy limitation).

In any case, Claimant's contract claims do not belong in a claim petition proceeding before a WCJ, who does not have jurisdiction to issue declaratory judgments on the meaning of a contract, even a contract in the form of a workers' compensation policy. Courts decide breach of contract issues. The WCJ adjudicates disputes arising from the Act. The WCJ does have authority to adjudicate the significance of the LIBC forms executed by claimant and properly did so here.

■ Next, Claimant argues that Insurer's failure to issue the executive officer exclusionary endorsement was fatal to its position that it does not owe him coverage under the policy. Claimant asserts that Insurer was required to issue a policy to Employer that complied in all respects with the Rating Manual. In support, Claimant points to Section 654 of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. § 814(e), which states, in relevant part, that an insurer may not

> issue, renew, or carry any policy or contract of insurance against such liability under such acts, except in accordance with the classifications, underwriting rules, premium rates, and schedule or merit rating plans, proposed by the rating bureau or bureaus aforesaid for the

the Administrative Agency Law, 2 Pa.C.S. § 704; *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 327, 652 A.2d 797, 799 (1995). Moreover, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *Id.* at 328, 652 A.2d at 800.

6. The policy provides that "the policy provision, declarations or information page, and endorsements, if any, completes this policy" and "[t]he terms of this policy may not be changed or waived except by endorsement[.]" R.R. 371a–372a.

risk insured and as modified, amended or approved by the Insurance Commissioner for such insurer.

*Id.* Claimant argues that the Rating Manual required Insurer to use the executive officer exclusionary endorsement in order to exclude Claimant from coverage.

The Rating Manual provides that where an employer wishes to exempt an executive officer from coverage, that officer must complete Forms LIBC–509 and 513. *See* Rating Manual, April 1, 2005, Rev., Section 1, at 25, Rule IX § A(3)(a) (Rating Manual, ——). The Rating Manual also states that the employer "must return both completed forms to [its] insurance company [and][t]he carrier will endorse [its] policy by attaching an Exclusion of Executive Officers Endorsement—Pennsylvania (WC 37 03 10A)." Rating Manual, Section 1, at 25, Rule IX § A(3)(b). The Rating Manual also states that "[t]he circumstances under which each endorsement *must or may be used* are described in the supplementary notes following each endorsement." Rating Manual, Section 3, at 2 (emphasis added). However, the supplementary notes are silent on when the executive officer exclusionary endorsement "must or may be used." Rating Manual, Section 3, at 61. The only clear mandate in the Rating Manual is that the executive officer must personally execute Forms LIBC–509 and 513 in order to effect an exemption from coverage under the policy.

Again, it is not the responsibility of the WCJ to enforce the provisions of The Insurance Company Law of 1921 or the terms of the Rating Manual. If Claimant believes Insurer has failed to follow the terms of the Rating Manual in violation of state insurance regulatory law, he should make a complaint to the Rating Bureau or to the Pennsylvania Insurance Department or both.

The Act governs proceedings before a WCJ. Section 104 of the Act authorizes an executive officer of a corporation to elect to be excluded from workers' compensation insurance coverage. 77 P.S. § 22. To implement Section 104, the Pennsylvania Department of Labor and Industry has promulgated Forms LIBC–509 and 513. Consistent with Section 104, Claimant executed Forms LIBC–509 and 513, and they were filed with the Department of Labor and Industry. Accordingly, Claimant effected his election to be excluded "from all benefits and rights … under the Pennsylvania Workers' Compensation Act." Form LIBC–513; R.R. 322a.

Accordingly, for the foregoing reasons, we affirm.

### ORDER

AND NOW, this 4th day of June, 2012, the order of the Workers' Compensation Appeal Board, dated July 25, 2011, in the above-captioned matter is hereby AFFIRMED.