# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Billie Jean Slotkin,                                    :
                                    Petitioner        :
                                                       :
          v.                                           :   No. 663 C.D. 2015
                                                       :   Submitted: January 22, 2016
Workers' Compensation Appeal               :
Board (Jewish Home of Eastern              :
Pennsylvania),                                         :
                                    Respondent        :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  May 17, 2016**


Billie Jean Slotkin (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), denying Claimant's petition to reinstate compensation benefits.  We now affirm.

On March 17, 2010, during the course of her employment with Jewish Home of Eastern Pennsylvania (Employer), Claimant fell and sustained a work-related injury to her left knee and right elbow.  Employer issued a Notice of Workers' Compensation Denial, which provided that Employer "would pay reasonable, necessary and related medical expenses for an injury of left knee contusion and right elbow bruise."  (WCJ Hemak Op. at 1.)  Claimant filed a claim petition in which she sought to have the full description of her injuries acknowledged.  She did not seek wage loss benefits.  After a hearing, during which

both Claimant and Employer presented the testimony of medical experts, WCJ Hemak granted Claimant's claim petition. In so doing, WCJ Hemak held that Claimant sustained a "compensable work-related left knee injury" and ordered that the "injury shall properly be acknowledged as a left knee contusion with multiple ligamentous sprains involving ACL, PCL and MCL, as well as a mild partial tearing of her lateral patellar retinaculum, a contusion to her Hoffa's fat pad and an aggravation of her underlying knee arthritis and meniscal injury." (*Id.* at 2-3.) WCJ Hemak's decision was not appealed by either party.

On February 1, 2012, Claimant filed a petition to reinstate compensation benefits, alleging that she was entitled to a reinstatement because her condition had worsened.[1] (Certified Record (C.R.), Reinstatement Pet.) Employer denied the allegations in Claimant's reinstatement petition, and WCJ Peleak conducted several hearings. During the July 10, 2012, hearing before WCJ Peleak, Claimant testified that after her injury of March 17, 2010, she continued to work for Employer, albeit in a restricted capacity. (Reproduced Record (R.R.) at 8a.) As a Certified Nursing Assistant, Claimant's pre-injury job duties concerned "patient care," including activities such as walking with residents and changing them. (*Id.*) After her injury, Claimant's duties were limited to activities such as watching residents, performing nail care, and offering residents food and drinks. (*Id.*) Although Claimant's job duties had changed after the injury, she continued to earn the same wages. (*Id.* at 9a.) Prior to her injury, Claimant had been treated by Christopher Metzger, M.D., for a knee condition. (*Id.* at 9a-10a.) After her injury,

---

[1] As noted above, in the initial claim petition, Claimant did not seek, nor does it appear that she received, compensation benefits.

Claimant was treated by Sheryl Oleski, D.O. (*Id.* at 9a.) In November 2011, Dr. Oleski took Claimant out of work. (*Id.* at 10a-11a.) Upon her return to work in December 2011, Claimant was limited to sedentary duty, which she described as "basically just sitting and watching residents." (*Id.* at 11a.) Claimant began treatment with Jack Henzes, M.D., who scheduled Claimant for a total knee replacement surgery. On cross-examination, Claimant admitted to degenerative changes and pain in her left knee prior to her fall on March 17, 2010, for which she took Vicodin and received Xylocaine and cortisone injections. (*Id.* at 14a-15a, #19a, 21a-22a.) Claimant also testified that she had wanted arthroscopic surgery for her knee prior to her injury, but that she did not schedule an appointment. (*Id.* at 21a.)

Claimant returned to testify before WCJ Peleak on December 6, 2012. Claimant explained that Dr. Henzes had performed surgery on her left knee on August 9, 2012. (*Id.* at 33a.) Claimant did not return to work after the surgery. (*Id.*) Claimant testified that she had an appointment with Dr. Henzes on February 6, 2013, at which point Dr. Henzes would determine whether Claimant would be able to return to work. (*Id.* at 34a.) At the time of the hearing, Claimant intended to return to work if she received authorization from Dr. Henzes. (*Id.* at 37a-38a.)

In support of her reinstatement petition, Claimant offered the deposition testimony of Dr. Oleski. Dr. Oleski testified that she is board certified in physical medicine and rehabilitation, as well as sports medicine. (*Id.* at 45a.) Dr. Oleski testified that she began treating Claimant for her knee injury on October 6, 2010. (*Id.* at 49a.) Based on her initial treatment of Claimant and her review of Claimant's medical records, Dr. Oleski opined:

3

My impression was that [Claimant] suffered a left knee contusion with multiple ligamentous sprains involving the ACL, PCL as well as the MCL. That she suffered a Hoffa's fat pad impingement or contusion type injury. She suffered a meniscal injury. And that this was due to the fall from her work-related injury. And that she also suffered from preexisting arthritis and meniscal degeneration.

(*Id.* at 52a.) Claimant and Dr. Oleski discussed the possibility of arthroscopic surgery, but Dr. Oleski believed that Claimant was not a good candidate for arthroscopic surgery due to her underlying arthritis. (*Id.* at 53a.) Dr. Oleski informed Claimant "that she really needed to undergo a knee replacement if she was to be able to try to get back to work full duty." (*Id.* at 55a.) Claimant's complaints concerning her knee remained relatively consistent until her appointment with Dr. Oleski on November 11, 2011. (*Id.* at 60a.) During the appointment, Claimant complained that "the pain was more severe and her knee was starting to give out." (*Id.*) Due to Claimant's risk of falling, Dr. Oleski felt that Claimant should not continue to work. (*Id.* at 62a.) Dr. Oleski released Claimant back to work when she learned that Employer could accommodate Claimant "in a very sedentary duty capacity." (*Id.* at 62a-63a.) Claimant would remain on sedentary duty until the knee replacement surgery was performed. (*Id.* at 67a.) Dr. Oleski opined that despite Claimant's pre-existing arthritis, the knee replacement surgery was a result of Claimant's work-related injury. (*Id.* at 68a.)

Employer presented the deposition testimony of Patrick Respet, M.D., a board certified orthopedic surgeon. Dr. Respet testified that he performed an independent medical evaluation (IME) of Claimant on November 29, 2011. (*Id.* at 124a.) Upon performing a physical examination of Claimant and reviewing her medical records, Dr. Respet concluded that Claimant "had sustained a

4

contusion or a bruising of her left knee, which was in addition to an osteoarthritic knee." (*Id.* at 136a.) An MRI of Claimant's knee performed in May 2010 revealed tricompartmental degenerative changes, indicating that Claimant suffered from osteoarthritis. (*Id.* at 136a-37a.) Dr. Respet noted that Dr. Metzger had recommended that Claimant consider a total knee replacement in 2007. (*Id.* at 140a.) Dr. Respet opined that Claimant's current symptoms and work restrictions were not causally related to her work injury, but, rather, to her pre-existing osteoarthritis. (*Id.* at 142a, 145a.) When asked whether he agreed with WCJ Hemak's conclusion that Claimant's work injury caused an aggravation of her underlying arthritis, Dr. Respet testified:

> A. She had a flare-up of her symptoms from that, which I would have anticipated to recover in two or three months.
>
> Q. And is it possible to have aggravation or exacerbations that do, over time, resolve but you're left with the underlying degenerative condition?
>
> A. I think that's the picture that would be most consistent in this instance.

(*Id.* at 142a-43a.) Dr. Respet reiterated his conclusion that Claimant sustained a knee contusion from which she had recovered, but he further explained that Claimant was recovered from the aggravation of her underlying arthritis, meniscal injury, and the partial tearing of her lateral patellar retinaculum. (*Id.* at 147a-49a.) During the IME, Dr. Respet found no evidence of ligamentous sprains involving the ACL, MCL, and PCL. (*Id.* at 147a-48a.) On cross-examination, Dr. Respet explained that he believed the most accurate diagnosis of Claimant's work injury was a left knee contusion. (*Id.* at 152a-53a.) He did not agree with all of the diagnoses and conclusions in WCJ Hemak's decision, as he attributed Claimant's symptoms to "degenerative changes, not trauma." (*Id.* at 159a.)

5

WCJ Peleak issued an opinion denying Claimant's reinstatement petition. In so doing, the WCJ explained that Claimant's reinstatement petition concerned her injury on March 17, 2010, which "was described as a left knee contusion and right elbow bruise." (WCJ Peleak Op. at 1.) The WCJ also summarized the testimony of Drs. Oleski and Respet, and rendered the following credibility determination:

> After deliberation and consideration of all the evidence, we find the opinion of Dr. Respet, the orthopedic surgeon, to be the most credible. We respect the opinion of Dr. Oleski, but she is not a surgeon and cannot deny that [Claimant]'s underlying arthritis was deteriorating before the contusion she suffered to her knee on March 17, 2010. We further accept Dr. Respet's opinion that because the arthritis was so extensive in the joint, rather than concentrated in just the area of trauma, that it was the natural progression of that underlying condition that necessitated the knee replacement. Further, we cannot overlook that physicians were recommending a knee replacement for the Claimant prior to the work injury.

(*Id.* at 2.) The WCJ concluded that Claimant failed to satisfy her burden to prove that the worsening of her condition was caused by her injury and that the most credible evidence demonstrated that the worsening of Claimant's condition was the result of her underlying arthritis. (*Id.* at 3.) Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant then petitioned this Court for review.

On appeal,[2] Claimant first contends that Dr. Respet's testimony was incompetent to support the finding that Claimant's worsening condition was due to

---

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are **(Footnote continued on next page…)**

6

her underlying arthritis rather than her injury on March 17, 2010. Claimant also argues that WCJ Peleak erred in failing to accurately describe the accepted, previously-litigated injury and, therefore, his findings and conclusions were improperly based on a misunderstanding of Claimant's condition.

We first address Claimant's argument that Dr. Respet's testimony was incompetent. Specifically, Claimant contends that Dr. Respet failed to acknowledge Claimant's accepted injury—specifically, the aggravation of Claimant's underlying arthritis—as found by WCJ Hemak during the proceedings concerning Claimant's first claim petition. Rather, Dr. Respet rejected WCJ Hemak's finding as to the extent of Claimant's injuries and found instead that Claimant had only suffered a contusion as a result of her work-related injury. Such testimony, Claimant contends, is an attempt by Employer to relitigate the accepted description of the injury, which is barred by the doctrine of *res judicata.*

In support of her argument that Dr. Respet's testimony was barred by the doctrine of *res judicata*, Claimant cites our decision in *Noverati v. Workmen's Compensation Appeal Board (Newtown Squire Inn)*, 686 A.2d 455 (Pa. Cmwlth. 1996). There, a claimant was awarded compensation benefits for a work-related injury resulting in the aggravation of pre-existing scoliosis, despite the testimony of the employer's expert indicating that the claimant's disability was caused by the pre-existing condition. The employer later sought suspension of the claimant's benefits and presented the testimony of the same expert, who again opined that the

---

**(continued…)**

supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

claimant's work injury caused no disability. The WCJ dismissed the employer's suspension petition, explaining that the expert's testimony was essentially the same as that which was offered during the claim petition proceedings. The WCJ concluded that the employer "was precluded under the theory of *res judicata* from relitigating the original medical diagnosis underlying [the c]laimant's receipt of benefits." *Noverati*, 686 A.2d at 458. The employer appealed to the Board, which reversed. In so doing, the Board reasoned that the employer was not barred from seeking suspension based on evidence that the claimant's disability was no longer work-related. The claimant appealed to this Court, and we reversed the Board. Although we agreed with the Board that the employer could seek to suspend the claimant's benefits based on evidence that the claimant's current disability was no longer work-related, the employer could not "establish grounds for termination or suspension based on evidence that [the c]laimant's disability is not now work-related because, in fact, it never was work-related." *Id.* at 459-60. Accordingly, we concluded that "evidence that [the c]laimant's condition was not work-related in the first instance, a matter previously adjudicated in the Claim Petition proceeding, will not suffice to satisfy [the e]mployer's burden of proof in its subsequent [suspension] petition." *Id.* at 460.

The instant matter is distinguishable from *Noverati*. Here, Employer was not seeking to terminate or suspend Claimant's benefits and, therefore, it did not have to establish that Claimant's condition was not work-related in order to prevail. Rather, it was Claimant's burden to establish that the worsening of her

8

condition was the result of her work injury.[3]  As noted above, the WCJ rejected Dr. Oleski's testimony as not credible and concluded that Claimant did not satisfy her burden of proof.[4]  Thus, even if Dr. Respet's testimony was incompetent, Claimant failed to prove by substantial, credible evidence that the worsening of her

[3] A claimant seeking reinstatement after a suspension of benefits has the burden to "prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 558 (Pa. 2010).  If the claimant sustains this burden, the burden shifts to the opposing party, who "must show that the claimant's loss in earnings is not caused by the disability arising from the work-related injury." *Id.*  Here, Claimant's petition was captioned as a reinstatement petition and analyzed as such.  As noted above, however, it is not evident from the record that Claimant ever received compensation benefits.  In her initial claim petition, Claimant sought only the acknowledgment of the full description of her injury.  Further, in granting Claimant's claim petition, WCJ Hemak did not award compensation benefits.  This Court has held that "if the claimant has not established a loss of earning capacity resulting from the work injury, the case has not 'advanced procedurally or in substance to the suspension/reinstatement stage.'" *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015) (quoting *Klarich v. Workers' Comp. Appeal Bd. (RAC's Ass'n)*, 819 A.2d 626, 629 (Pa. Cmwlth. 2003)).  As Claimant has not yet established that she sustained a loss of earning capacity as the result of her work-related injury, Claimant's petition should have been analyzed as a claim petition.  Nevertheless, the application of a different burden of proof would not have affected the outcome of this matter, as the WCJ concluded that Claimant failed to prove that the worsening of her condition was caused by her work-related injury.  In both instances, Claimant would be required to establish some level of causation in order to obtain benefits.

[4] To the extent that Claimant argues that the WCJ erred in finding Dr. Respet's testimony more credible than that of Dr. Oleski, we note that "the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.)*, 781 A.2d 1146, 1150 (Pa. 2001).  In rendering credibility determinations as to witnesses that did not testify live before the WCJ, the WCJ must provide "some articulation of the actual objective basis for the credibility determination." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003).  Here, the WCJ explained that Dr. Oleski is not a surgeon and that Dr. Oleski did not deny that Claimant's pre-existing arthritis was deteriorating prior to her injury. (WCJ Peleak Op. at 2.)  This is an adequate, objective basis for the WCJ's credibility determination, and we, therefore, reject Claimant's argument as to the WCJ's credibility determinations.

condition was due to her work injury. *See Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004) ("[T]he WCJ is not required to accept even uncontradicted testimony.") Further, *res judicata* does not preclude an employer defending a reinstatement petition from presenting evidence "that an employee's *current* disability is due to non-work-related factors." *Noverati*, 686 A.2d at 459. Here, although Dr. Respet disagreed with WCJ Hemak's finding as to the extent of Claimant's injuries, Dr. Respet specifically acknowledged the aggravation of Claimant's underlying arthritis. (R.R. at 142a-43a, 149a.) Thus, although Dr. Respet may have disagreed with the work-relatedness of the injury as identified by WCJ Hemak, his testimony was competent because he assumed the presence of an aggravation of Claimant's underlying arthritis and testified as to Claimant's recovery. *See O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011) ("We have recently emphasized that a medical expert need not necessarily believe that a particular work injury actually occurred, and that the expert's opinion is competent if he assumes the presence of a previously accepted work-related injury and finds it to be resolved by the time of his examination."). We, therefore, reject Claimant's argument as to Dr. Respet's testimony.

Claimant next argues that the WCJ erred in failing to accurately describe Claimant's accepted work injury. Specifically, Claimant takes issue with the WCJ's first finding of fact, in which he describes the injury as "a left knee contusion and right elbow bruise." (WCJ Peleak Op. at 1.) Claimant contends that such a description improperly contradicts the description provided by WCJ Hemak, which, as Claimant argued above, includes an aggravation of Claimant's

10

underlying arthritis. As a result, Claimant argues that any findings and conclusions based on this description are erroneous. We disagree.

Although WCJ Peleak did not include the entirety of WCJ Hemak's description of Claimant's injury, this omission is, at most, harmless error. On appeal, this Court is required to "view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom." *Wagner v. Workers' Comp. Appeal Bd. (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461, 465 n.5 (Pa. Cmwlth. 2012). Here, Dr. Respet acknowledged WCJ Hemak's finding that Claimant sustained an aggravation of her underlying arthritis, but rejected Claimant's assertion that this aggravation caused her condition to worsen. WCJ Peleak summarized this testimony, noting that Dr. Respet had opined that Claimant "had advanced tricompartmental degenerative joint disease and the fall may have caused a flare-up of that condition, but the degree and extent of the arthritis was present in all three compartments of the knee joint. That is not normally the case when dealing with trauma." (WCJ Peleak Op. at 2.) As noted above, WCJ Peleak accepted Dr. Respet's testimony as more credible than that of Dr. Oleski and concluded that Claimant failed to meet her burden of proof. WCJ Peleak's acceptance of Dr. Respet's testimony demonstrates sufficient understanding of the nature of Claimant's initial work-related injury, and Dr. Respet's testimony constitutes substantial evidence upon which the WCJ could render findings of fact and conclusions of law. WCJ Peleak's failure to include the aggravation of Claimant's underlying arthritis in his description of Claimant's work-related injury does not, therefore, constitute reversible error, and we reject Claimant's argument to the contrary.

11

Accordingly, we affirm the Board's order.

_____
P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Billie Jean Slotkin,              :
             Petitioner     :
             :
         v.             :    No. 663 C.D. 2015
             :
Workers' Compensation Appeal     :
Board (Jewish Home of Eastern     :
Pennsylvania),              :
          Respondent    :

## **O R D E R**

AND NOW, this 17th day of May, 2016, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge