IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen Ritrovato,                          :
                        Petitioner          :
                                            :
          v.                                :  No. 1684 C.D. 2016
                                            :  Submitted: July 28, 2017
Workers' Compensation Appeal                :
Board (Rite Aid),                           :
                        Respondent          :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge (P.)
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: December 4, 2017

          Karen Ritrovato (Claimant), *pro se*, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that awarded her medical and indemnity benefits for the closed period from June 26, 2012, to November 30, 2012. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ). Claimant contends that the WCJ's finding that she was fully recovered by November 30, 2012, is not supported by substantial evidence. Discerning no merit to this claim of error, we affirm the Board.

          Claimant was employed by Rite-Aid (Employer) as a pharmacy manager. On August 3, 2012, she filed a claim petition alleging that she suffered a work-related injury when she lifted a large printer at work on June 6, 2012. Claimant sought full disability benefits as of June 9, 2012, and ongoing.[1] Employer filed an

---

[1] Claimant simultaneously filed a petition for penalties asserting that Employer did not reasonably investigate her injury and improperly denied her claim. The penalty petition is not at issue in this appeal.

answer to the claim petition denying all material allegations of Claimant's petition, and the matter was assigned to a WCJ.

Before the WCJ, Claimant testified about the June 6, 2012, incident. Claimant explained that when she discovered the printer was not working, she attempted to repair it. Claimant testified as follows:

> [WCJ]: And, then when you pulled the printer out, did it fall on the floor or did you put it on the floor, or was it on the floor?
>
> [Claimant]: It wasn't on the floor like an inch. I had to pull it out and put it on the floor.
>
> [WCJ]: You put it on the floor?
>
> [Claimant]: Yeah.
>
> [WCJ]: That's fine. Then what happened?
>
> [Claimant]: Then I pushed all these things in, and I felt my back bothering me. I had to push all these plugs and everything in the back of the printer. They – where the connections were to the printer, to the computer which was up on the counter.
>
> [WCJ]: So you were doing these maneuvers to somehow or other connect this computer and the printer, or vice versa, and that's when you felt back pain, right?
>
> [Claimant]: Yes.
>
> [WCJ]: And it was during your actual physical movements and maneuvers that you felt the back pain?
>
> [Claimant]: As soon as I did it, I felt the pain.

Notes of Testimony (N.T.), 9/17/2012, at 20-21. Claimant completed her shift by taking aspirin to address her pain. Claimant did not return to work the following day because she was not scheduled, and on June 8, 2012, Claimant was laid off.

2

Claimant testified that she reported the injury to Employer sometime between June 16, 2012, and June 19, 2012.

Claimant saw her family doctor, Dr. Joseph Altomonte, about her pain. Claimant submitted Dr. Altomonte's notes to the WCJ, which revealed he saw Claimant on June 20, June 26 and July 16, 2012. After her first appointment, Dr. Altomonte put Claimant on "bed rest and hot and cold therapy;" advised her to continue to take Ibuprofen; and prescribed her Soma, a muscle relaxant. *Id.* at 32-33. Dr. Altomonte noted that Claimant had "low back pain [due] to injury at work" and that he advised her not to return to work until further notice. N.T., 9/17/2012, Claimant's Exhibit 1 at 17.

Claimant testified that she began physical therapy in July 2012 under the care of Dr. Paul Bove, a chiropractor referred by Employer's insurance company. Claimant discontinued treatment with Dr. Bove when Employer's insurer denied her claim. She continued physical therapy treatments with Dr. Francis Cavoto for approximately six months.[2]

Claimant offered the deposition testimony of Dr. Bruce Barris, who is board-certified in internal medicine. Dr. Barris testified as follows regarding his physical examination of Claimant on January 21, 2013:

> [Dr. Barris]: … She complained at that time of low back pain. It was six over ten in intensity with radiation of pain into the buttocks. She also had neck and upper back stiffness. There was mild restriction of motion, moderate tenderness, mild spasm of the cervical spine and trapezius muscles. There was moderate restriction of motion, moderate tenderness, moderate spasm in the lumbosacral spine area. The cervical lateral flexion was 30

---

[2] Claimant offered the reports of Dr. Bove and Dr. Cavoto for purposes of the penalty petition. The WCJ did not accept the reports for purposes of the claim petition.

degrees right and leg with normal being 45 degrees. Lumbar flexion was 60 degrees with normal being 90 degrees.

Barris Deposition, 6/14/2013, at 8 (Barris Deposition at __). Dr. Barris discontinued Claimant's physical therapy because his examination revealed that Claimant's progress had plateaued. He refilled her prescriptions for Valium and Soma, and ordered an MRI of the lumbar spine.

Dr. Barris testified that the MRI of January 31, 2013, "revealed a disc bulge at L3-4 and a disc bulge with superimposed small central disc protusion at L4-5…which is a small disc herniation." *Id.* at 9. Dr. Barris opined that Claimant could not work as a pharmacist because of the physical and mental demands of the job; if he were to send Claimant back to work, it would be to a sedentary position with no lifting or excessive bending, and for no more than twenty hours per week. *Id.* at 24-25.

On cross-examination, Dr. Barris further discussed Claimant's MRI results. He testified that the MRI results were consistent with degenerative disc disease, as opposed to trauma, stating:

> [Counsel]: Okay. And under the impression section of the [MRI] report it indicates, number one, mild degenerative spondylosis of the lumbar spine, correct?
>
> [Dr. Barris]: Correct.
>
> [Counsel]: And that's basically, as I understand it, degenerative disc disease of the lumbar spine, is that generally correct?
>
> [Dr. Barris]: That's correct.
>
> [Counsel]: Degenerative disc disease again as I understand it, that's something that's more progressive age-related thing?
>
> [Dr. Barris]: That's correct.

4

[Counsel]: And then on the next page where the radiologist sets forth the actual findings, it looks like, according to the report, the L1-L2 level was basically normal, correct?

[Dr. Barris]: Correct.

[Counsel]: The L2-L3 level was basically normal, correct?

[Dr. Barris]: Correct.

[Counsel]: The L3-L4 level it indicates, "disc bulge and facet arthrosis without canal or foraminal stenosis." I read that correctly, right?

[Dr. Barris]: That's correct.

[Counsel]: And here's my question. Obviously it indicates that there's no stenosis, correct?

[Dr. Barris]: Correct.

[Counsel]: Well, canal or foraminal stenosis. And as I understand it, basically does that mean that there's no inversion on the nerve roots? Is that what that basically means?

[Dr. Barris]: Yes. That means that the nerve itself is not touched by the bulge of the disc protrusion.

[Counsel]: Okay. And the arthrosis, the facet arthrosis, is that again – that's more of a degenerative finding?

[Dr. Barris]: Yes, that would be more preexisting.

[Counsel]: And even the bulge, though, would that be more of a degenerative –

[Dr. Barris]: I kind of think of the bulge as more degenerative and the protrusion or herniation more of a process to be worried about.

[Counsel]: Okay. Then at the L4-L5 level on the report, it does indicate again disc bulge with superimposed small central protrusion without mass effect on the traversing nerve roots. So as I understand it, according to the report, there's a small central protrusion but it's not traversing or touching the nerves.

5

[Dr. Barris]:  That's correct.

[Counsel]:  And then again it goes on to state mild facet arthrosis. And again the arthrosis would be degenerative, correct?

[Dr. Barris]:  Correct.

[Counsel]:  And then mild bilateral neural foraminal stenosis is present.  And again that would be something more degenerative; is that right?

[Dr. Barris]:  Correct.

Barris Deposition at 21-24.

Although Claimant's nerve was not touched by the disc protrusion, Dr. Barris testified that her complaints were consistent with the MRI results:

[Counsel]: Can you please explain to the court how [Claimant's] complaints are consistent with the MRI even though [the nerves are] not touching?

[Dr. Barris]:  Well, if by lifting the printer she had injured her lower back and caused the protrusion, then she has significant injury and that would cause her pain in her buttocks.

[Counsel]:  And if there's a preexisting condition, would that make it more likely a person could injure themselves doing something that might not hurt someone without a preexisting condition?

[Dr. Barris]:  That's correct.

Barris Deposition at 33.

Employer offered the deposition testimony of Dr. Christian Fras, who is board-certified in orthopedic surgery.  Dr. Fras did an Independent Medical Examination (IME) of Claimant on November 30, 2012.  Dr. Fras testified that Claimant's physical examination was objectively normal, but notable for signs of symptom magnification, which is "a term that is used to describe findings that are

inconsistent with the structural or organic basis of pathology." Fras Deposition, 8/16/2013, at 23. Dr. Fras explained:

> There was no focal tenderness to palpation anywhere in her neck [or] mid or lower back or about the shoulders bilaterally.
>
> When palpating her back she denied any tenderness but noted that she could feel it. There was no paraspinal muscle spasm anywhere in her neck or mid or lower back.
>
> [Claimant] declined to pursue active range of motion testing of her neck or lower back for fear of provoking pain. She was however able to bend at the waist when getting in and out of a chair and on and off the exam table. The degree of bending at the waist was consistent with a reasonably normal range of motion of the lower back. Again she got in and out of a chair and on and off the exam table without difficulty.
>
> [Claimant's] physical examination was objectively normal but was notable for evidence of symptom magnification in a variety of areas including weakness throughout the entirety of all muscle groups of the bilateral upper and lower extremities. This weakness is not something that would be consistent with a neurologic deficit or reflective of myotomal distribution of nerve pathology.
>
> There was cogwheeling and giving-way on strength testing, which are classic ratcheting type of giving-way findings that are inconsistent with a neurologic deficit but are classically described as related to symptom magnification.

*Id.* at 21-23.

Dr. Fras also reviewed Claimant's history, which included, *inter alia*, Claimant's MRI results, Claimant's deposition, and Dr. Altomonte's notes. When questioned about Claimant's MRI results, Dr. Fras stated:

> [Dr. Fras]: I noted mild degenerative changes with mild loss of disk hydration and L4-5 with a trivial degenerative disk bulge. I noted that that disk bulge did not exert any mass effect on the neural elements. There were no disk herniations visible.

7

[Counsel]: What does it mean to say that there were no mass effect by the disk bulge at L4-5?

[Dr. Fras]: It was not compressing the nerves in any way.

*Id.* at 24.

Based upon Claimant's history and physical examination, Dr. Fras opined that Claimant did not sustain a work injury. Further, he found no objective evidence to substantiate Claimant's "subjective complaints of pain" as of November 30, 2012. *Id.* at 27-28.

On April 11, 2014, the WCJ issued a decision granting Claimant's claim petition. In doing so, the WCJ credited Claimant's and Dr. Barris' testimony to find that Claimant suffered a work-related injury on June 6, 2012. The WCJ also credited the testimony of Dr. Fras that Claimant had recovered from her work-related injury by November 30, 2012, the date of the IME.[3]

Employer appealed. It argued there was a conflict between the WCJ's findings of fact and conclusions of law. The WCJ determined that Claimant sustained a work-related injury on June 6, 2012, and had recovered from her work injury as of the date of the IME, November 30, 2012. Nevertheless, the WCJ granted Claimant ongoing benefits. The Board agreed that the WCJ's decision was internally inconsistent and remanded for "clarification on whether Claimant's disability is ongoing or whether Claimant reached full recovery from her disability as of November 30, 2012." Board Order, 3/31/2015.

---

[3] Specifically, the WCJ found as follows:

> Based on the record, particularly the testimonies of the Claimant and of Dr. Barris, without any objection with respect to Dr. Altomonte's note, the Claimant sustained a work injury in the nature of low back pain on June 6, 2012 and could not have performed her pre-injury job as a pharmacist from June 26, 2012 to November 30, 2012, specifically the date of Dr. Fras' examination of the Claimant.

WCJ Decision, 4/11/2014, at 10, Finding of Fact No. 35.

8

On remand, the WCJ held a hearing at which Claimant offered additional testimony. She confirmed that she has not worked since June 6, 2012. Claimant further testified that she cannot stand or concentrate for long periods, nor can she sit for long periods because she "must move around." N.T., 6/7/2015, at 7-9. Claimant testified that she was not capable of working in any capacity.

On November 6, 2015, the WCJ issued a second decision. The WCJ again granted Claimant's claim petition, finding that Claimant suffered a work injury on June 6, 2012. However, the WCJ found that Claimant had fully recovered from the work-related injury as of November 30, 2012, and, thus, terminated benefits as of that date. Claimant appealed to the Board.

The Board affirmed. To the extent Claimant argued the WCJ's factual findings were not based on substantial evidence, the Board noted that she was challenging findings the WCJ had made in her initial decision. Simply, the WCJ found Employer's medical evidence more persuasive on the duration of Claimant's disability. Claimant then petitioned for this Court's review.

On appeal,[4] Claimant contends that several of the WCJ's findings of fact are not supported by substantial evidence. Employer responds that the WCJ's findings are amply supported, and that Claimant is really assailing the WCJ's credibility determinations, which are beyond the scope of appellate review.

Substantial evidence is that which a reasonable mind will accept to support a finding of fact. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa.

---

[4] Our scope of review "is limited to determining whether there has been a violation of constitutional rights, errors of law committed, board procedures violated, or whether necessary findings of fact are supported by substantial evidence." *Reed v. Workers' Compensation Appeal Board (Allied Signal, Inc.)*, 114 A.3d 464, 468 n.3 (Pa. Cmwlth. 2015).

9

Cmwlth. 1990). In evaluating a substantial evidence challenge, an appellate court may not reweigh the evidence or review credibility determinations. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Furthermore, the court "must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced [from the evidence]." *Wagner v. Workers' Compensation Appeal Board (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461, 465 n.5 (Pa. Cmwlth. 2012). Last, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005) (quoting *Delaware County v. Workers' Compensation Appeal Board (Baxter Coles)*, 808 A.2d 965, 969 (Pa. Cmwlth. 2002)). With these principles in mind, we turn to Claimant's assignments of error.

Claimant first asserts that the evidence of record does not support portions of Findings of Fact Nos. 18, 20, and 22.[5] These findings state as follows:

> 18. Dr. Barris' testimony established that Claimant was medically disabled and couldn't work as a pharmacist on February 4, 2013 and that Dr. Barris' testimony did not attribute a reason, specifically the Claimant's work injury, to the cause of the Claimant's medical disability from her job as a pharmacist during his testimony.

> ***

> 20. Although Dr. Barris testified as aforesaid with respect to the Claimant's diagnostic test results, Dr. Barris' testimony didn't establish any diagnosis of the Claimant as a result of the alleged

---

[5] Claimant's brief asserts Findings of Fact Nos. 19, 21, 23, and 30 are not supported by substantial evidence. However, Claimant's brief quotes portions of Findings of Fact Nos. 18, 20, 22, and 29. We review the actual language Claimant contests and refer to the findings by their correct numbers.

work injury, any disability specifically as a result of the alleged work injury, and any causation between any alleged diagnosed condition of the Claimant from the work injury and any resultant disability.

\*\*\*

22. Dr. Barris' testimony established that at the time of Dr. Barris' last examination of the Claimant on June 10, 2013 before his depositional testimony on June 14, 2013, the Claimant could have performed part time, sedentary work without lifting and excessive bending activities and for 20 hours per week and the Claimant had pain in the low back and a radiation of it into the buttocks and a worsened pain in the Claimant's neck and a radiation of it into the right upper arm. Although Dr. Barris testified as aforesaid, Dr. Barris' testimony didn't establish any diagnosis of the Claimant as a result of the alleged work injury, any disability specifically as a result of the alleged work injury, and any causation between any alleged diagnosed condition of the Claimant from the work injury and any resultant disability.

WCJ Decision, 11/6/2015, at 10-11, Findings of Fact Nos. 18, 20, 22.

Claimant maintains that Dr. Barris opined that her disc degeneration was aggravated by trauma. In support, Claimant directs the Court to Dr. Barris' testimony that "*if* by lifting the printer she had injured her lower back and caused the protrusion, then she has significant injury and that would cause her pain in her buttocks." Barris Deposition at 33 (emphasis added). Claimant also contends that Dr. Barris discussed Dr. Altomonte's notes, which attributed Claimant's lower back pain to the printer incident.

Employer responds that a complete review of Dr. Barris' testimony shows that he discussed Claimant's MRI results and complaints of pain, but he did not offer a diagnosis or specific opinion on the causation of her back pain. Claimant relies on a portion of Dr. Barris' testimony that offers, at best, an equivocal medical opinion because he prefaced the entire answer with the word "if." The only point

11

where Dr. Barris attributed Claimant's lower back pain to her lifting Employer's printer was when he summarized Dr. Altomonte's note. That Dr. Barris summarized another physician's note does not mean he adopted that physician's opinion on causation.

We agree with Employer. Dr. Barris' testimony does not establish, *by itself*, that Claimant was injured by lifting the printer on June 6, 2012. He did not offer an unequivocal opinion that Claimant's back pain was caused by the work incident. Nevertheless, the WCJ found that Claimant suffered a work injury on June 6, 2012, based on Claimant's testimony together with Dr. Barris' testimony. WCJ Decision, 11/6/2015, at 14, Finding of Fact No. 37. Notably, Employer did not challenge the WCJ's award of compensation.

Claimant next asserts that Finding of Fact No. 29 conflicts with Finding of Fact No. 18. Finding of Fact No. 29 states:

> 29. Although Dr. Fras' testimony established that Dr. Fras couldn't identify any injury to the Claimant's low back on November 30, 2012, the Claimant had low back pain as a result of the injury of June 6, 201[2] in accordance with the testimonies of the Claimant and Dr. Barris and made a recovery from the work injury of June 6, 201[2] by November 30, 2012 on the basis of Dr. Fras' testimony.

WCJ Decision, 11/6/2015, at 12-13, Finding of Fact No. 29. Claimant maintains that the WCJ's finding that she had recovered by November 30, 2012, conflicts with the statement in Finding of Fact No. 18 that "Dr. Barris' testimony established that the Claimant was medically disabled and couldn't work as a pharmacist on February 4, 2013." *Id.* at 10, Finding of Fact No. 18.

12

Employer responds that Finding of Fact No. 18 merely summarized Dr. Barris' testimony. It does not mean the WCJ credited those statements.[6] Indeed, the WCJ did not credit that portion of Dr. Barris' testimony, but instead credited Dr. Fras' statement that Claimant had recovered by November 30, 2012. *See* WCJ Decision, 11/6/2015, at 12-13, Finding of Fact No. 29.

Again, we agree with Employer. Finding of Fact No. 18 summarized Dr. Barris' testimony, but in Finding of Fact No. 29 the WCJ credited Dr. Fras' testimony regarding the duration of Claimant's injury. The WCJ reiterated this finding in Finding of Fact No. 37, which states:

> Based on the record, particularly the testimonies of the Claimant and of Dr. Barris, without any objection with respect to Dr. Altomonte's note, the Claimant sustained a work injury in the nature of low back pain on June 6, 2012 and could not have performed her pre-injury job as a pharmacist from June 26, 2012 to November 30, 2012, specifically the date of Dr. Fras' examination of the Claimant….

WCJ Decision, 11/6/2015, at 14, Finding of Fact No. 37. In short, Findings of Fact Nos. 18 and 29 do not conflict. The WCJ followed the standard paradigm for workers' compensation opinions by summarizing the facts of the case, including relevant medical testimony, in numbered paragraphs, culminating in specific credibility determinations.

Claimant is really challenging the WCJ's credibility determinations. She suggests that Dr. Barris' testimony regarding the duration of her disability should be credited over the testimony of Dr. Fras. We disagree. It is well settled that the "WCJ, as fact-finder, has complete authority over questions of witness

---

[6] Although the word "established" could, in some contexts, suggest a finding of credibility, the WCJ used that term throughout her decision when summarizing testimony. We do not interpret the word as an indicator that the WCJ deemed all such testimony credible.

13

credibility and evidentiary weight." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Moreover, "the WCJ is entitled to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Ausburn v. Workers' Compensation Appeal Board (Merrell & Garaguso)*, 698 A.2d 1356, 1358 (Pa. Cmwlth. 1997). Here, the WCJ credited the medical opinion of Dr. Fras regarding the duration of Claimant's disability over that of Dr. Barris. We will not disturb the WCJ's determination on appeal.

For these reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Karen Ritrovato, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1684 C.D. 2016 |
| | : | |
| Workers' Compensation Appeal | : | |
| Board (Rite Aid), | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 4th day of December, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter dated August 17, 2016, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge