IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania State University, :
:
Petitioner :
:
v. : No. 1662 C.D. 2018
: Submitted: April 5, 2019
Workers' Compensation Appeal :
Board (Underhill), :
:
Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  November 15, 2019


          The Pennsylvania State University (Employer) petitions for review
from the Workers' Compensation Appeal Board's (Board) order that affirmed a
Workers' Compensation Judge's (WCJ) order granting William Underhill's
(Claimant) Claim, Reinstatement and Penalty Petitions and awarding counsel fees
under the Workers' Compensation Act (Act).[1]  Employer argues that the WCJ erred
and abused her discretion by granting Claimant's Penalty Petition and awarding
counsel fees based on Employer's alleged mishandling of the submission of
appropriate documents.  Employer also claims that the WCJ erred by granting

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

Claimant's Claim and Reinstatement Petitions and awarding indemnity and medical expenses beyond February 3, 2016. Upon review, we affirm.

## I. Background

Claimant worked for Employer for 11 years as a catering employee. On March 14, 2016, Claimant filed a Claim Petition alleging that he sustained a left knee patella subluxation/meniscus tear occurring on November 5, 2015, in the course and scope of his employment. Claimant sought partial disability benefits from November 6, 2015, to November 8, 2015, and total disability benefits thereafter, along with the payment of medical bills. Reproduced Record (R.R.) at 1a-3a.

Employer filed an answer stating that it issued a Notice of Temporary Compensation Payable (NTCP) on December 7, 2015, and paid benefits until February 3, 2016, when Employer issued a Notice Stopping Temporary Compensation (Notice Stopping) and a Notice of Compensation Denial (Denial). The Denial acknowledged a left knee sprain with a closed period payable from November 10, 2015 through February 2, 2016. Employer denied any ongoing disability. R.R. at 4a-5a.

Thereafter, Claimant filed Penalty and Reinstatement Petitions alleging that Employer unilaterally stopped payment of total disability benefits on February 3, 2016, without following the statutory requirements. Claimant asserted that Employer's Notice Stopping and the Denial, both dated February 3, 2016, were null and void because no NTCP was ever filed with the Bureau of Workers' Compensation (Bureau). Having failed to file an NTCP, Employer's payment of total disability benefits up to February 2, 2016, constituted an admission of liability

2

tantamount to issuing a Notice of Compensation Payable (NCP). Claimant asserted that total disability benefits are payable as of February 3, 2016, and ongoing. In addition, Claimant requested penalties in the amount of 50 percent of unpaid benefits along with the payment of counsel fees based on Employer's violation of the Act. R.R. at 8a.

Employer filed a timely answer denying all material allegations in Claimant's Penalty and Reinstatement Petitions. Employer alleged that its carrier filed an NTCP dated November 30, 2015, by mail, which the Bureau received as acknowledged by its notice of receipt dated December 7, 2015. It also served the NTCP on Claimant by mail. Employer appropriately stopped benefits on February 3, 2016. R.R. at 12a.

Claimant subsequently amended his petitions to indicate that a suspension of benefits was appropriate as of September 19, 2016, based on his return to full-duty work.

Hearings before a WCJ ensued on all petitions. Claimant testified and presented the deposition testimony of Bureau Representative Harte Pricer (Bureau Representative), and his treating physician, Mark Buseck, M.D., a board-certified orthopedic surgeon (Claimant's Physician). In opposition, Employer presented Bureau documents, three surveillance videos, and the deposition testimony of Carrie Andrews, the carrier's claims adjuster (Claims Adjuster), John Michael Lindner, Employer's Director of Housing and Food Services, and Thomas Kramer, M.D., a board-certified orthopedic surgeon (Employer's Physician). A summary of the relevant testimony and findings follows.

With regard to the injury, Claimant testified his job as a catering employee was relatively physical and involved lifting heavy boxes and moving

3

food carts. He testified that he injured his left knee while pulling a pallet jack with a heavy load that was stuck in an elevator. When he strained, he felt and heard a pop in his left knee, accompanied by an onset of pain, which continues. He worked the rest of his shift, then reported the injury to his supervisor and filled out an incident report. The next day, he returned to work, but could not continue working. He received treatment and returned to work with light-duty restrictions, which were no lifting over 10 pounds and no standing for more than two hours in a shift. Claimant worked Saturday, November 7, 2015, and was not scheduled to work on Sunday, November 8, 2015. He reported to work on Monday, November 9, 2015, but only worked a couple hours before his manager told him there was no more light-duty work available. Claimant testified that he received workers' compensation benefits until he returned to light-duty work on December 14, 2015. WCJ's Op., 6/30/17, Finding of Fact (F.F.) No. 9; R.R. at 43a-51a.

On December 16, 2015, Claimant returned to Claimant's Physician's office, reporting increased pain in his knee, at which point, Claimant was taken off work. On February 26, 2016, Claimant's Physician performed surgery on Claimant, where a cadaver bone was used to repair his medial patellofemoral ligament. After surgery, Claimant developed deep vein thrombosis blood clots and was treated with blood thinners, physical therapy, and a brace. In April 2016, Claimant underwent another anesthesia procedure, performed by his Physician, to manipulate his knee. Claimant's condition improved and he was released to light-duty work on July 1, 2016, but work within his restrictions was not offered. Claimant testified that he returned to full-duty work on September 19, 2016, and has been working ever since. He continues treatment for his knee, which remains symptomatic and painful. F.F. Nos. 9, 13; R.R. at 51a-59a.

4

Claimant's Physician testified that he examined and began treating Claimant's left knee injury on December 7, 2015. Claimant's Physician took a history from Claimant, reviewed his medical records, and conducted a medical exam. He observed swelling of the left knee and mobility issues. Claimant's Physician diagnosed Claimant with patellar subluxation with disruption of the medial patellofemoral ligament. He released Claimant to light-duty work. Upon a return examination on December 16, 2015, Claimant reported that his knee pain had worsened and he had difficulty climbing in and out of his work truck. At this point, a physician's assistant removed Claimant from work. At a follow-up visit in January 2016, Claimant continued to complain of pain and swelling. The diagnosis remained the same. Due to the persistence of pain, Claimant's Physician recommended surgical intervention. He operated on Claimant on February 26, 2016. Thereafter, Claimant developed deep vein thrombosis, which slowed down Claimant's therapy and recovery. Claimant's Physician performed a second surgical procedure to manipulate the left knee. Thereafter, Claimant's condition continued to improve. Claimant's Physician released Claimant to full-duty work as of September 19, 2016. Claimant's Physician opined that Claimant's left knee condition was causally related to the November 5, 2015, work injury as described by Claimant. F.F. No. 18.

Employer presented surveillance evidence, in the form of three videos and a report. The WCJ found:

> The one dated December 22, 2015 is very unstable and difficult to watch, but appears to show . . . Claimant walking at the Grove City Outlet. The surveillance appears to be following three (3) young men, however, you can only see them from behind and the picture is extremely jittery and it's impossible to note the gait of any of the individuals. Subsequent footage shows what

5

appears to be young men trying on shirts or jackets, but the footage is in shadows and you can't make out who any of the individuals are let alone how they are moving. The other two (2) DVDs are of better quality, but similarly show . . . Claimant walking, sometimes with a limp, for relatively short periods of time. Sometimes the footage is of . . . Claimant going to or leaving physical therapy.

F.F. No. 17.

When questioned about the surveillance, Claimant explained that he "sucked it up" and was "willing to pay for it afterwards" in order to buy Christmas gifts for his children. F.F. No. 9; R.R. at 68a. He also testified that he was wearing a brace on his knee while shopping and it was very sore after the trip. R.R. at 73a.

Employer's Physician testified that he conducted an independent medical examination (IME) of Claimant on February 2, 2016. Based on his understanding regarding the mechanism of injury, his review of medical records and diagnostic studies, as well as his physical examination of Claimant, Employer's Physician testified that Claimant had some edema within the patella, but no evidence of tearing of the medial patellofemoral ligament, meniscal tear or any evidence to suggest any collateral ligament or cruciate ligament tear that would require surgery. Employer's Physician opined that Claimant sustained a work injury resulting in a left knee sprain, from which Claimant had fully recovered as of his examination. F.F. No. 19.

With regard to the submission of paperwork in connection with Claimant's injury, Employer uploaded Bureau documents, which included: a "Receipt of Temporary Notice of Compensation Payable" letter dated December 7, 2015 (Receipt); a Statement of Wages dated February 3, 2016; a Notice Stopping dated February 3, 2016, providing that, as of that date, Employer decided not to

accept liability for the injury; and a Denial, also dated February 3, 2016. The Bureau records do not contain an NTCP (form LIBC-501). F.F. No. 5.

The WCJ reviewed the Bureau documents in the Workers' Compensation Automation and Integration System (WCAIS), which confirmed that Employer uploaded a Statement of Wages, Notice Stopping, and Denial, all submitted February 3, 2016.[2] The Bureau received a first report of injury (FROI) via an electronic data interchange (EDI) on December 1, 2015, at which point a jurisdictional claim number (JCN) was electronically assigned and sent to Claims Adjuster for future submissions. The WCJ also noted a subsequent report of injury (SROI) filed on December 7, 2015 and another SROI filed on February 4, 2016. Under correspondence, the WCJ noted that the Bureau sent the Receipt on December 7, 2015. The WCAIS does not note the filing of an NTCP. F.F. No. 6.

Employer also uploaded into evidence an NTCP on April 25, 2016. However, the WCJ found that there is nothing on this NTCP to show that it was ever filed with the Bureau. There is no date or time stamp or numerals at the bottom as compared to other Bureau records that Employer uploaded. The NTCP bears the Claims Adjuster's signature, but there is no indication as to the date that it was signed. Claims Adjuster did not upload this form into WCAIS as she had the other Bureau documents. F.F. No. 7.

Bureau Representative testified that the Bureau sent the Receipt advising that an NTCP was being issued in response to an EDI transaction

___

[2] The WCAIS is the Department of Labor and Industry's web-based system that integrates the program areas of the Bureau, Workers' Compensation Office of Adjudication (Office), and the Board. It enables users to file petitions, applications, forms and other documents online with the Bureau and the Office and is found at https://www.dli.pa.gov/Businesses/Compensation/WC/claims/wcais/Pages/PA-WC-Automation-and-Integration-System.aspx (last visited 10/15/19).

notifying the Bureau that the carrier intended to file an NTCP. However, she testified that the NTCP was never filed electronically in the WCAIS. It was not filed by mail. She acknowledged that the JCN was not issued until December 1, 2015, with the filing of an FROI. She testified that, since September 2016, the EDI transaction generates the NCP, NTCP, Notice Stopping and Denial. These documents can only be filed electronically. There are no longer paper filings of these documents. F.F. No. 12.

Claims Adjuster testified that she has handled Claimant's case since its inception. She works out of her home residence in Georgia and has done so since November 13, 2015; the office move occurred not long after Claimant's work injury. She testified that she signed and mailed a hard copy of the NTCP on November 30, 2015, or December 1, 2015. She sent the hard copy of the NTCP by mail because the Bureau had not yet released a JCN on the claim because the FROI was not filed. Claims Adjuster testified that, according to her log note of November 30, 2015, she mailed a copy of the NTCP to both the Bureau and Claimant. She received the Receipt dated December 7, 2015, indicating the NTCP was received. Claims Adjuster testified that she relied upon the Bureau's Receipt and believed that the Bureau had received the hard copy of the NTCP filed by mail. It was not until after the litigation began that she learned the Bureau was contending that it never received the NTCP. She stated Claimant never told her he did not receive the NTCP. She testified that she ultimately stopped the NTCP and issued a Denial on February 3, 2016, based on the IME and her review of the surveillance videos. F.F. No. 14.

In addition, Claims Adjuster testified regarding Employer's "Three for One" Program (Program), which enables an injured employee to collect his or

her regular salary while out of work. Pursuant to this Program, Employer issued payments to Claimant from November 10, 2015, through February 2, 2016, with two exceptions: December 24, 2015, through January 3, 2016, when Claimant received holiday pay and December 14 and 16, 2015, when he returned to work and partial disability was issued. F.F. No. 14.

On cross-examination, Claims Adjuster testified that an EDI transaction for FROI was filed with the Bureau on December 1, 2015, but she did not generate the FROI. Instead, it was generated by the WCAIS. While she had no specific recollection, she assumed that when she was preparing the NTCP on November 30, 2015, and found no JCN, she realized that there was no FROI on file. Typically, if she sees something missing, she will generate it. She planned to generate the FROI the following day, but did not do so because she saw that the system had just done it. She had no exact recollection of this, but was able to positively state that the FROI was generated on December 1, 2015. According to her notes, she received the JCN on December 2, 2015. At the time that she prepared the NTCP, she did not have the claim number. Claims Adjuster admitted that after mailing the NTCP, she did not check WCAIS to see if it was duly recorded. Once she received the Receipt, it did not occur to her that the NTCP had not arrived at the Bureau. On February 3, 2016, she prepared and electronically filed a Notice Stopping and Denial, and although she would have seen the NTCP was missing on WCAIS at that point, she did not look for it. F.F. No. 14.

Claimant testified he did not receive the NTCP, but acknowledged receiving the Bureau's Receipt. *See* F.F. No. 21; R.R. at 58a-59a. Claimant also acknowledged he was paid under Employer's Program from the date of injury through February 2, 2016. F.F. No. 9; R.R. at 65a.

9

Ultimately, the WCJ credited the testimony of Claimant in its entirety. "His testimony was straightforward, consistent over several hearings and consistent with his medical evidence." F.F. No. 20. The WCJ found Claimant's Physician to be more credible than Employer's Physician, noting that Claimant's Physician treated Claimant over an extended period of time, saw the inside of Claimant's knee during surgery, provided conservative treatment before surgery, and returned Claimant to work without restrictions. On the other hand, Employer's Physician saw Claimant only once, his documented findings were inconsistent with other providers, and he conceded that his diagnosis of knee sprain would allow for a more specific subluxation diagnosis. F.F. No. 22.

In addition, the WCJ found Bureau Representative more credible than Employer's Claims Adjuster with regard to the filing of the NTCP. The WCJ explained:

> I do not dispute that [Claims Adjuster] may have intended to mail and even thought she would have mailed the [NTCP] to . . . Claimant and the Bureau. However, she was not sure whether this mailing occurred on November 30, 2015, or December 1, 2015 and she had no specific recollection of actually mailing the [NTCP]. Her Claim Notes, attached to the deposition as Exhibit 1, contain the note from 11/30/2015 at 10:26 p.m. saying "Issued [an NTCP] . . ." and "Will scan and image to SIR [(the carrier's document storage program)]. . . ." According to her testimony, she prepared the [NTCP] that night, the copies were not mailed when the note says they were, WCAIS shows that the Statement of Wages was not filed when the JCN populated, but several months later on February 3, 2016 when the Notice Stopping and Denial were issued, and that she admitted she did not scan the images to SIR until months later, mistakenly just leaving it on her desktop. When she did not do any of the other things listed in her claim note, I am at a loss to believe that she mailed the [NTCP] to

10

. . . Claimant and the Bureau a day later. That the [NTCP] was not received by . . . Claimant or the Bureau is further indication of [Claims Adjuster's] testimony not being credible. [Employer] asks me to believe that both . . . Claimant and the Bureau are not credible in their testimony that the [NTCP] was not provided. Had the Claim[s Adjuster] correctly mailed the [NTCP] to both the Bureau and . . . Claimant, one of them should have noted its receipt. I do not accept that both recipients made the same mistake at the same time. It is more likely that the mistake lies with [Claims Adjuster], particularly in light of her moving her office right around the same time and not completing most of the tasks listed in her Claim Note of 11/30/15. She also did not initially generate the FROI or even attempt to issue any other documents until November 30, 2015, when the injury occurred November 5, 2015. Had the FROI been timely recorded, this could have resolved every other issue that occurred. Finally, it is also noted that [Claims Adjuster] testified that it was her intent to actually accept this claim for a closed period, however, she did not actually issue a Bureau Document to this effect. Rather, the . . . Denial was issued acknowledging a left knee sprain with a closed period payable from November 10, 2015, through February 2, 2016, and stating that any ongoing disability and/or injury is denied. This is not the proper use of a Denial and does not demonstrate a legal acceptance of the claim. Rather, it appears that she was again taking unilateral action without actually accepting any legal liability.

F.F. No. 21.

Based on the credited evidence, the WCJ found that Claimant sustained a left knee injury on November 5, 2015, in the nature of a patella subluxation with disruption of the medial patellofemoral ligament with surgery resulting in deep vein thrombosis, which caused a loss of earning power. F.F. No. 23. The WCJ also found that Employer never properly filed an NTCP and did not issue an FROI in a timely manner. F.F. No. 23.

11

The WCJ concluded that Claimant met his burden on all petitions. The Receipt is not a Bureau form that actually accepts the injury as compensable on a temporary basis. An actual NTCP must be filed with the Bureau, either electronically or by mail. Because the NTCP was not properly filed, Employer could not modify or stop payment of benefits. The WCJ further concluded that Claimant was entitled to all partial and total disability benefits due until he returned to full-duty work on September 19, 2016, at which point benefits were suspended. WCJ Op., Conclusion of Law (C.L.) No. 5.

With regard to the Penalty Petition, the WCJ determined that Employer violated the Act by not timely submitting an FROI, failing to file an NTCP, unilaterally changing the payment of benefits from total to partial under the NTCP, unilaterally stopping the payment of benefits, and by intending to accept liability for a closed period of disability, but not officially recognizing the claim. The WCJ awarded a 50 percent penalty on all benefits payable from February 6, 2016, to September 19, 2016, in the amount of $8,211.06. C.L. No. 6. The WCJ also determined that Employer engaged in an unreasonable contest because its own errors and omissions in filing the proper documentation fueled the litigation, and she awarded counsel fees of $8,880, with no deduction from Claimant's benefits. C.L. No. 7. Thus, the WCJ granted Claimant's Claim, Reinstatement and Penalty Petitions and awarded counsel fees. Employer appealed to the Board, which affirmed. Employer now petitions this Court for review.[3]

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

## II. Issues

Employer contends that the WCJ abused her discretion by granting Claimant's Penalty Petition and awarding counsel fees. In addition, Employer argues that the WCJ erred by awarding indemnity benefits and medical expenses beyond February 3, 2016, where competent evidence shows that Claimant sustained only a sprain/strain and fully recovered from this injury as of that date.

## III. Discussion
## A. Penalty Petition & Counsel Fees

First, Employer claims that the WCJ abused her discretion by granting Claimant's Penalty Petition and awarding counsel fees. According to Employer, the record evidence shows that Employer's carrier timely created, signed and mailed the NTCP to the Bureau and paid benefits to Claimant. Therefore, Employer did not violate the Act. Alternatively, even if Employer violated the Act by failing to timely file an NTCP, such violation was unintentional, and Claimant was not prejudiced because he received his full salary through February 2, 2016. Consequently, the imposition of penalties and counsel fees is completely unwarranted here and should be reversed.

Preliminarily, we note that the WCJ, as the ultimate fact-finder in workers' compensation cases, "has exclusive province over questions of credibility and evidentiary weight . . . ." *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehabilitation)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010). "The WCJ's authority over questions of credibility, conflicting evidence and evidentiary weight is unquestioned." *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28 (Pa. Cmwlth. 2005). The WCJ may accept or reject the testimony of any witness, including a medical witness, in

13

whole or in part. *Id.* We are bound by the WCJ's credibility determinations. *Id.* at 29.

"[I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Minicozzi*, 873 A.2d at 29 (citation omitted). We examine the entire record to see if it contains substantial evidence, which is such relevant evidence as a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.* Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. *Wagner v. Workers' Compensation Appeal Board (Anthony Wagner Auto Repairs & Sales, Inc.)*, 45 A.3d 461 (Pa. Cmwlth. 2012).

With respect to the imposition of penalties, Section 435(d) of the Act[4] permits a WCJ to award a penalty when it is apparent that an employer and/or insurer has violated the Act. *Farance v. Workers' Compensation Appeal Board (Marino Brothers, Inc.)*, 774 A.2d 785, 789 (Pa. Cmwlth.), *appeal denied*, 788 A.2d 380 (Pa. 2001). The Act permits a maximum penalty of 10 percent of the amount of the award and interest except in cases of unreasonable or excessive delay, in which the penalty may be increased to 50 percent. 77 P.S. §991(d)(i). The decision to impose penalties as well as the amount of penalties is within the discretion of the WCJ. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 228 (Pa. Cmwlth. 2008).

_____

[4] Added by Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §991(d).

14

We review the award of penalties, as well as the amount of penalties imposed, for an abuse of discretion. *Id.* A claimant who files a penalty petition must meet his initial burden of proof that a violation of the Act has occurred; the burden then shifts to the employer to prove that the violation has not occurred. *Id.* The question of whether an employer violated the Act is a question of law. *Mercer Lime and Stone Co. v. Workers' Compensation Appeal Board (McGallis)*, 923 A.2d 1251, 1255 n.7 (Pa. Cmwlth. 2007).

As to the relevant requirements of the Act at issue here, Section 406.1(a) of the Act[5] requires an employer to promptly investigate each reported injury and commence the payment of benefits pursuant to either an NCP or NTCP within 21 days. Where the employer is uncertain as to whether a claim is compensable under the Act or the extent of its liability, the employer may initiate compensation payments without prejudice and without liability pursuant to an NTCP. 77 P.S. §717.1(d)(1).

Here, the WCJ found that Employer failed to issue and properly file documentation accepting Claimant's injury and unilaterally ceased payments on February 3, 2016, in violation of the Act. F.F. No. 23. The WCJ's findings are supported by the credible testimony of Bureau Representative and Claimant as well as the documentary evidence. Bureau Representative credibly testified that the Bureau never received an NTCP from Employer. R.R. at 209a-10a. Claimant also testified that he did not receive a copy of the NTCP, but he acknowledged receiving a copy of the Bureau's Receipt. R.R. at 58a-59a. According to the Bureau's records, Employer only filed a Statement of Wages, a Notice Stopping and Denial of workers' compensation benefits as of February 3, 2016. R.R. at

---

[5] Added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §717.1(a).

307a-13a. Bureau Representative also testified that Employer did not issue the FROI in a timely manner, which delayed the issuance of a JCN. R.R. at 202a. According to the Bureau's records, the Bureau did not receive an EDI of the FROI of Claimant's November 5, 2015 injury until December 1, 2015. R.R. at 177a.

Employer argues that its carrier issued and mailed an NTCP on November 30, 2015, or December 1, 2015, as evidenced by the Receipt and Claims Adjuster's testimony. However, the WCJ found otherwise based on conflicting evidence. F.F. No. 23. Bureau Representative credibly testified that the "so-called receipt of" the NTCP was triggered by an EDI transaction, when the Bureau received the FROI for Claimant's claim, which updated the claim to temporary status. R.R. at 199a. The EDI transaction "triggered [the] generation of [the Receipt] in anticipation of submission of the LIBC 501, the expected form . . . ." R.R. at 199a.

Although Employer's Claims Adjuster testified that she timely created, signed and mailed a copy of the NTCP to the Bureau, the WCJ rejected her testimony noting recollection issues and a lack of follow through, and found Bureau Representative's conflicting testimony to be more credible. F.F. Nos. 14, 21, 23. The WCJ explained:

> Based upon the credible testimony of record, it is found as fact that the [NTCP] was not properly filed. Had the Claims Adjuster issued the FROI in a timely manner, the [NTCP] could easily have been filed in WCAIS. The [NTCP] was never mailed to . . . Claimant or the Bureau or at least one of them would have noted receipt of the document. This is evident by the [Claims Adjuster]'s failure to perform any of the other tasks listed on the note upon which she was relying in saying she would have mailed the [NTCP]. [Employer], therefore, paid wage loss and medical benefits without filing a document acknowledging the injury. Since [Employer] did not file

16

the [NTCP], they [sic] cannot take advantage of the provisions of the . . . Act allowing them [sic] to stop payment of benefits with a Notice Stopping and Denial.

F.F. No. 23.

Employer's challenge that Claims Adjuster's testimony was more credible and that Bureau Representative's testimony was "not credible and should not have been accepted" constitutes an impermissible attack on the WCJ's credibility determinations, which we will not entertain. Petitioner's Brief at 20. *See Minicozzi*, 873 A.2d at 28-29.

Upon review, we conclude that the WCJ did not err in determining that Employer violated the Act. As the WCJ noted, Employer's violations caused Claimant to lose income for months and forced him to litigate numerous petitions to their conclusion, while bearing the burden of proof. F.F. No. 23. The WCJ acted within her discretion by imposing a 50 percent penalty for Employer's unreasonable delay. Therefore, we will not overturn the penalty. *See City of Philadelphia*.

As for the award of counsel fees, Section 440 of the Act[6] authorizes the WCJ to award reasonable counsel fees to a claimant where there has been an

---

[6] Added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. §996. Section 440 provides:

> (a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings:

**(Footnote continued on next page…)**

17

unreasonable contest as to a claimant's entitlement to his workers' compensation benefits. The WCJ determined that Employer's contest was not reasonable because the litigation was necessitated by the fact that Employer failed to file appropriate documents in a timely manner. We discern no abuse of the WCJ's discretion in this regard.

## B. Claim and Reinstatement Petitions

Next, Employer claims that the WCJ erred by granting Claimant's Claim and Reinstatement Petitions and awarding indemnity benefits and medical expenses beyond February 3, 2016. Employer maintains that the WCJ capriciously disregarded competent evidence and improperly relied on Claimant's incredible testimony in rendering her findings. According to Employer, the overwhelming weight of the evidence supports termination of benefits as of February 3, 2016.

---

**(continued…)**

> Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.
>
> (b) If counsel fees are awarded and assessed against the insurer or employer, then the [WCJ] must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended. If the insurer has paid or tendered payment of compensation and the controversy relates to the amount of compensation due, costs for attorney's fee shall be based only on the difference between the final award of compensation and the compensation paid or tendered by the insurer.

77 P.S. §996.

18

R.R. at 347a. Employer's Physician conducted an IME on February 2, 2016, in which he determined that Claimant only suffered a sprain/strain and had fully recovered from the injury as of that date. R.R. at 314a-319a, 397a. In addition, surveillance evidence showed that Claimant did not have any significant problems with his left knee. R.R. at 398a; Supplemental Certified Record, Employer's Exhibit D-E (DVDs). Even Claimant's Physician released Claimant to light-duty work, which was temporarily available. When not available, Claimant received his full salary under Employer's Program between November 10, 2015, when his disability first began, through February 2, 2016. Claimant's failure to acknowledge or deny that he was paid his full salary impugns his credibility.

A review for capricious disregard of material, competent evidence is an appropriate component of appellate review in any case in which the question is properly raised before a court. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). A capricious disregard of evidence occurs where "the WCJ's findings reflect a deliberate disregard of competent evidence that logically could not have been avoided in reaching the decision . . . ." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1205 (Pa. Cmwlth. 2007). Where substantial evidence supports the findings, and those findings in turn support the conclusions, it should remain a rare instance where an appellate court disturbs an adjudication based on capricious disregard. *Wintermyer*, 812 A.2d at 491-92.

In a claim proceeding, a claimant bears the burden of proving he suffered a work-related injury in the course and scope of his employment causing a loss of earning power. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993); *Morrison v. Workers' Compensation*

19

*Appeal Board (Rothman Institute)*, 15 A.3d 93, 97-98 (Pa. Cmwlth. 2010). Where the causal connection between the work incident and alleged disability is not obvious, unequivocal medical evidence is necessary to establish it. *Fotta v. Workmen's Compensation Appeal Board (U.S. Steel)*, 626 A.2d 1144, 1146 (Pa. 1993); *Justus v. Workers' Compensation Appeal Board (Bay Valley Foods)*, 147 A.3d 1237, 1241 (Pa. Cmwlth. 2016). A WCJ may reinstate a claimant's workers' compensation benefits upon proof that the claimant's disability has increased or recurred. Section 413(a) of the Act, 77 P.S. §771; *Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 783 (Pa. Cmwlth. 2015).

Here, the WCJ reviewed the evidence presented by both parties and issued an 18-page opinion, wherein she summarized the evidence and made credibility findings. Contrary to Employer's assertions, the WCJ did not overlook or capriciously disregard medical evidence in determining that Claimant met his burden on his Claim and Reinstatement Petitions. The WCJ considered the conflicting medical testimony and made appropriate findings.

Claimant's Physician diagnosed Claimant with a work-related injury in the nature of a "patellar subluxation with disruption of the medial patellofemoral ligament." R.R. at 243a. Claimant's Physician performed surgery on Claimant on February 26, 2016. R.R. at 237a. When Claimant developed deep vein thrombosis as a complication of surgery, Claimant's Physician performed a second procedure. R.R. at 240a. Thereafter, Claimant's Physician opined that Claimant's condition had improved significantly, and he released Claimant to full-duty work, without restrictions, as of September 19, 2016. R.R. at 240a-41a. Claimant's Physician testified that Claimant has not fully recovered because he has ongoing residuals

from the work injury, although he was nearing maximum medical improvement. R.R. at 248a-49a.

Although Employer presented conflicting medical evidence, the WCJ credited Claimant's medical evidence over Employer's, explaining:

> The testimony of [Claimant's Physician] is found to be more credible than that of [Employer's Physician]. [Claimant's Physician] saw . . . Claimant over an extended period of time and noted findings that were consistent during serial examinations as well as consistent with findings from other providers. He provided conservative treatment before proceeding with surgery and subsequent to surgery, . . . Claimant was able to return to work without restrictions. During surgery, [Claimant's Physician] was able to visualize the inside of . . . Claimant's knee so he is in a better position to describe the findings. [Claimant's Physician] did not "coddle . . . Claimant," but provided treatment and support. [Employer's Physician] saw . . . Claimant on only one occasion, documented findings that were inconsistent with other providers, however, he acknowledged that with the type of injury diagnosed by [Claimant's Physician], [and that] findings can be different on different days. In addition, [Employer's Physician] based his opinion of full recovery, in part, on his review of "a" surveillance [DVD]. Since there are 3 surveillance [DVDs] in evidence, it is unclear whether he saw one (1) of these or if there is a completely different [DVD] that was viewed by [Employer's Physician]. [Employer's Physician] noted that . . . Claimant walked without a limp and could get into and out of his car without difficulty. My personal review of the three (3) surveillance [DVDs] noted times when . . . Claimant did appear to have some difficulties and often the quality of the pictures was so poor, it was not possible to tell if . . . Claimant was having any problems or not. Finally, [Employer's Physician] acknowledged that his diagnosis of knee "sprain" also allows for a more specific subluxation diagnosis (even though he does not necessarily agree with the diagnosis). Even though he

21

would not have done the surgery without a complete rupture of ligament, other orthopedic surgeons do not necessarily agree.

F.F. No. 22.

The WCJ also credited Claimant's testimony as "straightforward, consistent over several hearings and consistent with medical evidence." F.F. No. 20. Claimant testified regarding his injury, the two surgeries, his recovery, his return to full-duty employment, and ongoing pain. R.R. at 46a-47a, 52a-55a, 122a. Insofar as Employer attempts to impugn the credibility of Claimant on the basis that he should have made certain statements, Employer had multiple opportunities to cross-examine Claimant and failed to elicit the testimony it is now complaining that he failed to render.

Upon review, the WCJ carefully considered and weighed the evidence before her, made all necessary findings and conclusions, and clearly articulated her reasons for accepting and rejecting the testimony. Simply because the WCJ rejected Employer's evidence in favor of Claimant's evidence does not constitute a capricious disregard of the evidence. *See Grimm on Behalf of Grimm v. Workers' Compensation Appeal Board (Federal Express Corp.)*, 176 A.3d 1045, 1054 (Pa. Cmwlth.), *appeal denied*, 189 A.3d 385 (Pa. 2018) (a WCJ's express consideration and rejection of evidence does not constitute a capricious disregard of that evidence). This Court may not reconsider the WCJ's determinations on matters of credibility and evidentiary weight. *Minicozzi*, 873 A.2d at 29.

The WCJ's finding that Claimant sustained a work-related injury in the nature of a patella subluxation with disruption of the medial patellofemoral ligament, which required surgery and resulted in various periods of disability from November 5, 2015, until September 19, 2016, is amply supported by the testimony of Claimant and his Physician. As this evidence constitutes substantial, competent

22

evidence sufficient to support the WCJ's findings, we discern no error in the WCJ's award of indemnity benefits and medical expenses beyond February 3, 2016. For these reasons, we conclude that the WCJ properly granted Claimant's petitions and awarded counsel fees.

Accordingly, we affirm the Board's order.


_____
MICHAEL H. WOJCIK, Judge


Judge Cohn Jubelirer did not participate in the decision of this case.

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania State University,   :
  :
               Petitioner   :
  :
               v.   : No. 1662 C.D. 2018
  :
Workers' Compensation Appeal   :
Board (Underhill),   :
  :
               Respondent   :

# **O R D E R**

AND NOW, this 15th day of November, 2019, the order of the Workers' Compensation Appeal Board, dated November 27, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge